IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Tonya Claborn,**

    **Plaintiff,**

    v.                                  Case No. 2:11-cv-679

                                          **JUDGE GEORGE C. SMITH**
**The State of Ohio, et al.,**           **Magistrate Judge Kemp**

    **Defendants.**

## OPINION AND ORDER

This case is before the Court to consider the motion to stay filed by plaintiff Tonya Claborn and the motion to dismiss filed by defendants. Both motions have been fully briefed. For the following reasons, the motion to stay will be denied and the motion to dismiss will be granted in part and denied in part. As part of that latter order, plaintiff will be granted leave to file an amended complaint.

### I. Background

Ms. Claborn, proceeding pro se, filed this action on July 28, 2011, asserting claims of interference and retaliation under the Family Medical Leave Act (FMLA), infringement of her First Amendment rights in violation of 42 U.S.C. §1983, and a state law claim for the intentional infliction of emotional distress. Shortly thereafter, on August 10, 2011, Ms. Claborn, still proceeding pro se, moved to stay this action. Defendants Thomas Charles, Daniel A. Fodor, Joseph Montgomery, Thomas Wersell and the State of Ohio have opposed the motion to stay on a number of grounds. Additionally, on September 2, 2011, these defendants filed a motion to dismiss. The Court will turn first to the merits of the motion to stay.

## II.  The Motion to Stay

In her one-paragraph memorandum in support of her motion for stay, Ms. Claborn asserts that this case should be stayed pending the outcome of her criminal appeal in Case No. 10-CR-001047. That appeal was filed in the Franklin County Court of Common Pleas on June 22, 2011. She contends that she filed this federal action in order to comply with the statutes of limitations applicable to her claims.  According to Ms. Claborn, the outcome of her criminal appeal will determine whether she pursues or dismisses this action.

In response, defendants contend that a stay is not warranted for several reasons.  Their primary argument is that while a stay may be appropriate in circumstances where a civil defendant may be at risk of self-incrimination by testifying while a criminal matter is pending, in this case Ms. Claborn is the plaintiff and chose to initiate this action.  Further, they claim that because Ms. Claborn has already been convicted, she is at no risk of criminal liability and that her Fifth Amendment rights are not implicated by the continuation of this case.  Finally, defendants assert that Ms. Claborn has not demonstrated that the outcome of her criminal appeal would have any impact on the issue of their liability for her civil claims. Ms. Claborn's reply simply repeats her earlier argument in favor of a stay.

"A stay of a civil case is an extraordinary remedy that should be granted only when justice so requires."  *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007). "However, simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings."  *Id.* "The Fifth Amendment privilege not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer

questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Kammer v.Cincinnati Ins. Co.*, 2010 WL 2474329, *1 (E.D. Mich. June 11, 2010) quoting *In re Morganroth*, 718 F.2d 161, 164-65 (6th Cir. 1983). District courts have broad discretion in determining whether to stay a civil action under circumstances where the Fifth Amendment is implicated. *See Clark v. Lutcher*, 77 F.R.D. 415, 418 (M.D. Pa. 1977).

In her motion, Ms. Claborn does not provide any background relating to her criminal conviction. As a result, she does not contend specifically that her civil and criminal cases involve the same or closely related facts. That they do, however, is an inference fairly drawn from the statements in both her motion and reply to the effect that the outcome of her criminal appeal will affect her decision to pursue this case. Ms. Claborn also fails to cite to the Fifth Amendment as a basis for her stay request. Instead, the cursory statements in her briefs suggest that her request arises almost exclusively out of expense and efficiency concerns.

In opposing the stay, the defendants also do not shed any light on the criminal matter, but they do not dispute that overlap exists between the issues involved in this case and the criminal case. Further, the defendants acknowledge the Fifth Amendment issue. However, they contend that Ms. Claborn cannot file this action and then hide behind the Fifth Amendment to prevent defendants from achieving a speedy resolution of this matter. Additionally, the defendants argue that because Ms. Claborn already has been convicted, there is no risk of criminal liability and, therefore, her Fifth Amendment rights are not implicated.

Turning to the defendants' last point first, the Court does not agree that the fact that Ms. Claborn has been convicted eliminates any Fifth Amendment concerns. There is no dispute that

Ms. Claborn's conviction is on appeal. As a result, the possibility exists that she could be retried on criminal charges. Accordingly, it appears that she may reasonably invoke her Fifth Amendment privilege against self-incrimination in this case. *See Mccloskey v. White*, 2011 WL 780793 (N.D. Ohio March 1, 2011), citing *Prentice v. Hsu*, 280 F.Supp. 384, 388 (S.D.N.Y. 1968) (defendant's conviction in related criminal matter did not mean that questions presented would not incriminate him because the issues were not yet moot where appeal could result in a new trial); *Mitchell v. United States*, 526 U.S. 314, 326 (1999) (Fifth Amendment privilege against self-incrimination may continue to be asserted until judgment of conviction becomes final). Further, defendants' argument that Ms. Claborn's status as the plaintiff in this action automatically precludes a stay is similarly unpersuasive. *See Kammer, supra* (plaintiff's motion to stay granted when plaintiff had criminal charges pending against him relating to issues raised in the civil action).

More persuasive to the Court, however, is defendants' argument that Ms. Claborn has not demonstrated that the outcome of her criminal appeal would have any impact on the issue of their liability for her claims here. This argument is made more compelling in light of the defendants' filing of a motion to dismiss on grounds of immunity and failure to state a claim. Because, as further explained below, a ruling on defendants' motion to dismiss does not require the Court to consider any information beyond that presented by Ms. Claborn in her complaint, the concerns which generally might weigh in favor of a stay are not an issue with respect to the current proceedings. That is, Ms. Claborn's Fifth Amendment rights are not now at issue because she will not be required to answer any questions in connection with defending the motion to dismiss, nor in filing an amended complaint, which is an option the Court will afford to her to cure deficiencies

in her current complaint. Moreover, Ms. Claborn has responded to the motion to dismiss and has not contended that her criminal proceeding somehow prevented her from doing so fully. Consequently, in light of the current record, the motion to stay will be denied at this time. The Court will now proceed to consider the defendants' motion to dismiss.

### III. The Motion to Dismiss

#### A. Standard of Review

Defendants have moved to dismiss Ms. Claborn's complaint under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties: facial and factual. *Leader Technologies, Inc. v. Zacks*, 2008 WL 440423 at *3 (S.D.Ohio 2008). A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Id.* When facts presented to the district court give rise to a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. *Id.*

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974);

*Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts. *Erickson v. Pardus*, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 857, 858 (6th Cir. 1976). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id*.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

-6-

*Id.* Pro se complaints are to be construed liberally in favor of the pro se party. *See Haines v. Kerner*, 404 U.S. 519 (1972). It is with these standards in mind that the motion to dismiss will be decided.

The defendants assert that Ms. Claborn's claims should be dismissed for several reasons. Initially, they contend, relying on *Touvell v. Ohio Department of Mental Retardation and Developmental Disabilities*, 422 F.3d 392 (6th Cir. 2005) cert. denied 546 U.S. 1173 (2006), that they are immune from suit for Ms. Claborn's claim arising under the Family Medical Leave Act's self-care provision. Further, they assert that Ms. Claborn's claim under 42 U.S.C. §1983 against the State of Ohio and the remaining defendants in their official capacities is barred by the Eleventh Amemdment. They contend also that immunity bars Ms. Claborn's state law claim for the intentional infliction of emotional distress. Finally, they note that it appears that, although Ms. Claborn has named the State of Ohio as a defendant, the correct parties in interest are the Ohio Bureau of Workers' Compensation and the Ohio Office of the Inspector General.

In her one-paragraph response, Ms. Claborn asserts that because she named defendants other than the State of Ohio, it was her intention to name these defendants in their individual capacities. In reply, defendants argue that, even assuming that this was Ms. Claborn's intention, her §1983 claim cannot succeed. With respect to Mr. Charles, the defendants contend that it is well-settled law that Ms. Claborn cannot base her claim for relief against him on a respondeat superior theory. With respect to the remaining defendants, they contend that although Ms. Claborn has cited the First Amendment as the basis of her §1983 claim, she has not identified any conduct rising to the level of a constitutional violation. They contend that, at most, Ms. Claborn has alleged that they have made false statements and manipulated facts, and that such allegations

-7-

state no constitutional claim for relief.

### B. Ms. Claborn's FMLA Claim

Turning first to Ms. Claborn's FMLA claim, the Court agrees that this claim against the State of Ohio, or any of its agencies is barred by the Eleventh Amendment. The Sixth Circuit Court of Appeals has specifically held that Congress did not abrogate states' immunity from suits brought under the self-care provisions of the FMLA. *See Touvell*, 422 F.3d at 399–400. In reaching this conclusion, the Sixth Circuit drew an important distinction between the FMLA's self-care and family-care provisions. *See Touvell*, 422 F.3d at 399. While the Supreme Court has held that Congress abrogated states' immunity under the family-care leave provisions of FMLA, *see Nev. Dep't of Human Res. v. Hibbs*, 529 U.S. 721 (1972), the Sixth Circuit has expressly stated that "the Supreme Court's holding in *Hibbs* does not apply to the self-care provision of the FMLA, and ... private suits for damages may not be brought against states for alleged violations of the Act arising from" violations of the self-care provisions. *Touvell*, 422 F.3d at 400. In her complaint, Ms. Claborn has alleged only violations of her rights under the self-care provision. She has not alleged any facts relating to leave for a spouse or family care. Consequently, her FMLA claims against the State of Ohio, its agencies, and the remaining defendants in their official capacities (which are also claims against the State of Ohio) are barred by the Eleventh Amendment.

Additionally, to the extent that Ms. Claborn seeks to state a claim against the remaining defendants in their individual capacities, the FMLA does not impose liability on individual public agency employees. *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003); *see also Westermeyer v. Kentucky Dept. of Public Advocacy*, 2011 WL 830342 (E.D. Ky. March 3, 2011). Consequently,

Ms. Claborn's FMLA claim against the defendants in their individual capacities will be dismissed.

    C.  <u>Ms. Claborn's State Law Claim for the Intentional Infliction of Emotional Distress</u>

    Turning to Ms. Claborn's state law claim for the intentional infliction of emotional distress, to the extent that she seeks to assert this claim against the State of Ohio, its agencies, or the remaining defendants in their official capacities, this claim is barred by the Eleventh Amendment. The Sixth Circuit recognizes that state law claims against state employees in their official capacity are barred by the Eleventh Amendment. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir.2007) ("With respect to state law claims against the defendant officials in their official capacity, the Eleventh Amendment provides immunity from suit in federal court. The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment.... The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.") (internal citations omitted); s*ee also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that a "federal suit against state officials on the basis of state law [that is, pendent state law claims] contravenes the Eleventh Amendment when-as here the relief sought and ordered has an impact directly on the State itself."). As stated by the Supreme Court in *Pennhurst*:

> a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... this principles applies as well to state-law claims brought into federal court under pendent jurisdiction."

*Id.* at 121.

Further, to the extent that Ms. Claborn seeks to assert state law claims against certain defendants in their individual capacities, under O.R.C. §9.86 no such claims may be maintained against state officials unless and until it has been determined that those officials acted manifestly outside the scope of their employment. That determination cannot be made by a federal court, but is reserved to the Ohio Court of Claims under O.R.C. §2743.02(F). *Griffin v. Kyle*, Case No. 2:10-cv-664, 2011 WL 2885007 (S.D. Ohio July 15, 2011). As this Court explained in *Nuovo v. The Ohio State University*, 726 F.Supp. 2d 829, 848 (S.D. Ohio 2010)(Frost, J.),

> as another judicial officer has recognized, "[t]he Sixth Circuit has read §§ 9.86 and 2743.02(F) together to hold that a state employee is immune from state law claims until the Court of Claims has held that § 9.86 immunity is unavailable." *Prior v. Mukasey*, No. 3:08CV994, 2008 WL 5076821, at *2 (N.D.Ohio Nov. 21, 2008). This means that, "'[u]ntil the Ohio Court of Claims determines that [defendant] are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert jurisdiction.' " Id. (quoting *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir.1989)).

Ms. Claborn has presented no evidence that the Ohio Court of Claims has determined that these defendants are not entitled to immunity. Consequently, the motion to dismiss will be granted as to Ms. Claborn's intentional infliction of emotional distress claim under state law.

### D. Ms. Claborn's Claim Under 42 U.S.C. §1983

Defendants contend that Ms. Claborn's §1983 claim against the State of Ohio, any state agency, or the remaining defendants in their official capacities is barred by the Eleventh Amendment. The Court agrees. The Sixth Circuit has plainly stated that "[t]he Eleventh Amendment bars §1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009)(citing *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); *see also*

*Thiokol Corp v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 383 ("Congress did not intend to abrogate the states' Eleventh Amendment immunity by passing Section 1983."). "The Supreme Court has held that a state is not a 'person' who can be sued as that term is used in section 1983." *Thiokol Corp.*, 987 F.2d at 383. "These holdings apply also to claims against officials acting in their official capacities." *Id.* Because Congress did not abrogate states' immunity by enacting §1983, Ms. Claborn's §1983 claim against the State of Ohio, its agencies and the remaining defendants, to the extent they are being sued in their official capacities, are barred by the Eleventh Amendment and will be dismissed.

Defendants also contend that Ms. Claborn cannot succeed in her attempt to hold Mr. Charles liable under a respondeat superior theory. According to defendants, the complaint contains no allegations regarding any actions taken by Mr. Charles. Defendants contend that the only substantive allegation in the complaint relating to Mr. Charles is found at paragraph 54 which states, "At all times Defendant[] Thomas Charles ... [was] acting in concert with, and as [an] agent[] of, Thomas Wersell and Daniel Fodor of the State of Ohio Bureau of Workers' Compensation."

Defendants are correct in asserting that allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of *respondeat superior*, are necessary in order to hold an individual defendant liable under §1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim. Consequently, unless the plaintiff's complaint affirmatively pleads the

-11-

personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); *see also Stewart v. Taft*, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act").

The Court agrees that Ms. Claborn has failed to allege the direct involvement of Mr. Charles in any unconstitutional act.  The complaint alleges nothing more than his liability as a result of his position as the Inspector General for the State of Ohio through which he supervised Mr. Montgomery.  Consequently, Ms. Claborn's §1983 claim will be dismissed as to Mr. Charles.

Finally, to the extent Ms. Claborn is proceeding against the remaining defendants in their individual capacities, they assert that, although Ms. Claborn has identified the violation of her First Amendment rights as the basis for her §1983 claim, she has not alleged any constitutionally protected activity in her complaint.  Ms. Claborn does not address directly this argument in her response to the motion to dismiss.  However, the Court's review of her complaint reveals the following.

In her claim for relief under §1983, Ms. Claborn sets forth a number of false statements which she alleges were made or reported by defendants Fodor and Wersell.  Further, she asserts that Mr. Wersell "attempt[ed] to manipulate the facts against the Plaintiff."  Additionally, she

alleges that Mr. Montgomery released a report to the media and the public which contained "a multitude of false statements in an attempt to manipulate the facts against the Plaintiff" and indicated that she had "lied under oath."  At first glance, it may appear that Ms. Claborn is attempting to assert what could best be characterized as a state law defamation claim.  However, she also alleges in her complaint the loss of her job with the Ohio Bureau of Workers' Compensation and, in connection with her §1983 claim specifically, she alleges that the statements made by these defendants have caused her "extreme emotional distress, loss of income and benefits, loss of reputation, and have made it impossible for [her] to engage in her chosen profession."  These allegations, construed in the light most favorable to Ms. Claborn, suggest that she may be attempting to assert not merely a defamation claim but a due process claim resulting from the deprivation of a protected liberty interest.

It is well-settled that defamation, without more, does not state a claim under 42 U.S.C. §1983.  That is, harm or injury to reputation does not result in a deprivation of any "liberty" or "property" protected by the Due Process Clause.  *Paul v. Davis*, 424 U.S. 693 (1976); *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."); *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) ("there exists 'no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment'").

Rather, in order to plead a viable constitutional claim based on allegedly false statements made by government officials, a plaintiff must satisfy the "stigma-plus" test set forth by the Supreme Court in *Paul v. Davis*, *supra*.  *Doe v. Michigan Department of State Police*, 490 F.3d

491 (6th Cir. 2007). Specifically, a plaintiff must plead facts "show[ing] that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)." *Id.* at 502 (*quoting Paul*, 424 U.S. at 708); *see also Mertik*, 983 F.2d at 1362 ("the Court has limited the scope of an actionable liberty interest deprivation to situations involving termination of government employment or the loss of a legal right or status previously enjoyed under state or federal law.").

In *Ludwig v. Board of Trustees of Ferris State University*, 123 F.3d 404, 410 (6th Cir. 1997), the Sixth Circuit explained the elements that must be asserted by a plaintiff in order to state a claim regarding a liberty interest in his or her reputation.

> An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination. *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989). When a deprivation of a liberty interest of this kind occurs, the employee must be afforded notice and an opportunity to be heard to refute the charges disseminated against him. *See Chilingirian*, 882 F.2d at 205 (citing Roth, 408 U.S. at 573, 92 S.Ct. at 2707). "Thus, when a 'nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.' " *Id.* A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied. First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. *See Paul v. Davis*, 424 U.S. 693, 709-10, 96 S.Ct. 1155, 1164-65, 47 L.Ed.2d 405 (1976)(injury to reputation by itself is not a liberty interest protected under the Fourteenth Amendment). Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Chilingirian v. Boris*, 882 F.2d 200, 205-06 (6th Cir.1989); *Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1096-97 (6th Cir.1975). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Chilingirian*, 882 F.2d at 205-06 n. 8. Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might seriously damage his standing

and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. *Id.*

Third, the stigmatizing statements or charges must be made public. *See Bishop v. Wood,* 426 U.S. 341, 348-49, 96 S.Ct. 2074, 2079-80, 48 L.Ed.2d 684. Fourth, the plaintiff must claim that the charges made against him were false. *See Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884-85, 51 L.Ed.2d 92 (1977). Lastly, the public dissemination must have been voluntary. *See Chilingirian*, 882 F.2d at 205. If the above requirements are met, the employee is entitled to notice and an opportunity to be heard through a name-clearing hearing, *id.*, when plaintiff has made a request for such a hearing. *See Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir.1993); *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir.1989), rehearing granted and opinion reinstated in relevant part by, 901 F.2d 61 (5th Cir.1990). Such a hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Chilingirian*, 882 F.2d at 206.

*See also Quinn v. Shirey*, 293 F.3d 315 (6th Cir. 2002).

Here, Ms. Claborn has asserted in some detail the false statements that she claims were made by the defendants and has alleged, although only in connection with her FMLA claim, the loss of her job with the Ohio Bureau of Workers' Compensation. She also has alleged, without much detail, that she was questioned by Mr. Montgomery without the benefit of an attorney or a union steward and that while she was being questioned, she did not understand that she was under investigation. Finally, she has alleged, without any detail, that the defendants' statements have caused her extreme emotional distress, loss of income and benefits, loss of reputation, and have made it impossible for her to engage in her chosen profession.

Ms. Claborn's allegations, as currently stated, are too conclusory to state a claim for the deprivation of a liberty interest without due process under *Twombly's* pleading standard. However, the Court notes Ms. Claborn's pro se status and the tendency of courts in the context

of a Rule 12(b)(6) motion to afford leave to amend where the deficiencies in a pro se plaintiff's complaint may be cured by an opportunity to amend.  *See generally Brown v. Matauszak*, 415 Fed.Appx. 608,615 (6th Cir. 2011).  Given the allegations of the current complaint, the Court cannot conclude at this juncture that it is "patently obvious" that Ms. Claborn could not prevail on any set of facts alleged or that affording her the opportunity to amend would be futile.  *Id*.  Under this circumstance, the Court finds it a better exercise of discretion to permit Ms. Claborn to amend her complaint to set forth in greater detail the facts surrounding her §1983 claim.  Consequently, the motion to dismiss will be denied as to this claim pending Ms. Claborn's filing of an amended complaint.  In light of the Court's granting of the motion to dismiss in all other respects, however, Ms. Claborn's amended complaint may  address only this remaining claim.

## IV.  Conclusion

For the reasons stated above, plaintiff's motion for stay of proceedings (#4), based on the current state of the record, is **DENIED**.  Defendants' motion to dismiss (#7) is **GRANTED** in part and **DENIED** in part as set forth above.  The only remaining claim not dismissed with prejudice or for lack of jurisdiction is plaintiff's claim under 42 U.S.C. §1983 against defendants Montgomery, Wersell, and Fodor in their individual capacities.  Plaintiff is granted leave to amend this claim to address the deficiencies described above.  She shall file an amended complaint addressing only this remaining claim within fourteen days.  Her failure to do so will result in the dismissal of this remaining claim.

    **IT IS SO ORDERED**.


                                                   */s/ George C. Smith*

                                                              George C. Smith
                                                              United States District Judge