**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TONYA CLABORN,**

        **Plaintiff,**

       v.                                      **Case No.: 2:11-cv-679**

**JOSEPH MONTGOMERY** *et al.*,          **JUDGE SMITH**
                                                           **Magistrate Judge Kemp**

        **Defendants.**

## OPINION AND ORDER

This case arises out of Plaintiff's termination from her employment with the Ohio Bureau of Workers' Compensation and Industrial Commission ("BWC"). Plaintiff was terminated after an investigation by the Ohio Office of the Investigator General ("OIG") determined that Plaintiff had unlawfully used state resources for personal benefit. Specifically, Plaintiff was alleged to have used confidential databases to ascertain the identity of a motorist with whom she had been in a motor vehicle accident. The OIG conducted an investigation that included taking a recorded statement from Plaintiff that was later used as evidence of illegal conduct and which led to criminal charges against her. Based on the findings of the OIG, Plaintiff was criminally charged with Unauthorized Use of Property, Theft in Office, Perjury, and Falsification. In March of 2011, she was found guilty by a jury of Unauthorized Use of Property, Theft in Office and Falsification. Plaintiff's criminal convictions were upheld on appeal. *See State v. Claborn*, No. 11AP-549, 2012 Ohio 1417 (Ohio Ct. App. Mar. 30, 2012).

Plaintiff Tonya Claborn, acting *pro se*, filed this action on July 28, 2011, asserting claims of interference and retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C. §2601 *et*

*seq.*, infringement of her first amendment rights under 42 U.S.C. §1983, and a state law claim for intentional infliction of emotional distress. Plaintiff's first complaint was made against the State of Ohio as well as individual Defendants Joseph Montgomery (Deputy OIG), Thomas Wersell (Director of Special Investigations Department ("SID") and of Internal Security of the BWC), and Daniel A. Fodor (Supervisor of the Automated Detection and Intelligence Unit with SID). By Order dated November 13, 2011, the Court granted in part the Defendant's motion to dismiss the complaint, which resulted in the State of Ohio being dismissed on Eleventh Amendment grounds. The Court also allowed Plaintiff an opportunity to amend her complaint so as to state a claim for a due process violation against the remaining Defendants in their individual capacities. (Doc. 13).

Plaintiff filed her Amended Complaint on December 13, 2011 against Defendants Joseph Montgomery, Thomas Wersell, and Daniel A. Fodor. (Doc. 14). Defendants then moved to dismiss the Amended Complaint. (Doc. 19). In response to the Motion to Dismiss, Plaintiff filed a Response which was accompanied by numerous documents not previously attached to the Amended Complaint. (Doc. 20). At the same time, Plaintiff filed a Second Amended Complaint which referred to and contained the same documents attached to the Plaintiff's Response. (Doc. 21).[1] Defendants have filed a reply in support of its Motion to Dismiss, as well as a Motion to Strike Exhibits Attached to Plaintiff's Response and to Strike the Second Amended Complaint. Plaintiff has responded to the Motion to Strike.

---

[1] Approximately one month later, Plaintiff filed a Motion for Leave to File Second Amended Complaint. (Doc. 24).

On July 23, 2012, the Court ordered the parties to supplement the record with all pertinent portions of the record in the criminal case as it related to Plaintiff's motion to suppress. In addition, the parties were ordered to brief the issue of the applicability of collateral estoppel to Plaintiff's Fifth Amendment claims, as well as the applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994). The parties filed their supplemental briefs and the entire matter is now ripe for adjudication.

The Court will address the Plaintiff's Motion for Leave to File Second Amended Complaint first.

## II. LEGAL STANDARDS

### A. Motion To Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2) (2007). The grant or denial of a request to amend a complaint is left to the broad discretion of the trial court. *Gen'l Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp*.,

705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Generally, when considering a Motion to Dismiss under Rule 12(b)(6) the Court cannot consider matters outside the pleadings, However, the Sixth Circuit has held that district courts can take judicial notice of public records. *See Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005). Judicial notice of public records, however, should only be taken for those records "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Id.* That is, the Court "must only take judicial notice of facts which are not subject to reasonable dispute." *Id.*

### III. Legal Analysis

#### A. Motion to Amend

Defendants ask this Court to deny the Plaintiff's Motion for Leave to File Second Amended Complaint on the grounds of futility. Specifically, Defendants argue that the Plaintiff's Second Amended Complaint fails to allege that she requested a "name clearing hearing" from her employer as required in order to state a valid 42 U.S.C. §1983 claim for deprivation of a liberty interest. Defendants argue that Plaintiff's request for a name clearing hearing was not made to her employer, the BWC, but rather to the Office of the Inspector General and the Governor and therefore was insufficient. *See Warthman v. Genoa Twp. Bd of Trustees*, 549 F.3d 1055, 1062 (6th Cir. 2008) (a plaintiff "must request a name clearing hearing from the employer before filing his or her complaint"). As set forth below, the Court finds that

the Defendants' argument is without merit, but concludes that the Plaintiff's Second Amended Complaint is futile on other grounds.

     In her First and Second Amended Complaints, Plaintiff attempts to set forth a due process claim for deprivation of a protected liberty interest. As the Sixth Circuit has stated, an "injury to a person's reputation, good name, honor or integrity constitute the deprivation of a liberty interest when the injury occurs in connection with an employee's termination." *Ludwig v. Board of Trustees of Ferris State University*, 123 F.3d 404, 410 (6th Cir. 1997). When a deprivation of this type of liberty interest occurs, "the employee must be afforded notice and an opportunity to be heard to refute the charges disseminated against him." *Id*. In order to state a claim for deprivation of a liberty interest, the Plaintiff must allege: 1) stigmatizing statements made in connection with termination from employment, 2) the statements convey a moral stigma of immorality or dishonesty as opposed to inadequate performance or neglect of duty, 3) the statements are voluntarily made public by the employer, and 4) the plaintiff must claim that the statements were false. *Id*. If a plaintiff alleges these requirements, then he or she is "entitled to notice and an opportunity to be heard through a name-clearing hearing." *Id.* In order to state a claim for this type deprivation of a liberty interest, however, Plaintiff must allege that she requested a name clearing hearing from her employer. *See Warthman v. Genoa Twp. Bd of Trustees*, 549 F.3d 1055, 1062 (6th Cir. 2008).

     Defendants argue that Plaintiff failed to allege that she requested a name clearing hearing from her "employer" because she alleges only that she requested the hearing from Deputy Inspector General Joseph Montgomery and the Governor. The Court finds Defendants' apparent definition of Plaintiff's "employer" to be too narrow. Plaintiff is an employee of an Ohio state

agency, the Bureau of Worker's Compensation. Joseph Montgomery is a Deputy Inspector General for the State of Ohio and is specifically assigned to the BWC. *See* Ohio Rev. Code §121.52 (creating an OIG for the BWIC). Defendant Montgomery was the individual who investigated Plaintiff and who conducted the interview with Plaintiff that ultimately led to the charges against her.

In *National Aeronautics and Space Administration, Etc., v. Federal Labor Relations Authority*, 527 U.S. 229 (1999), the Supreme Court was called upon to determine whether an inspector general specifically assigned to investigate allegations of wrongdoing at NASA was an "agent" of NASA. In 1978, Congress had created an Office of Inspector General in several federal agencies, including NASA. At the same time, Congress enacted a law that gave an employee in an unionized unit in an agency a right to union representation at any examination of the employee by a "representative of that agency." *Id* (citing 5 USC §7114(a)(2)(B)). In that case, during an investigation by an OIG investigator assigned to NASA ("NASA-OIG"), the investigator limited the extent of a union representative's participation in an interview with an employee who was under investigation. The employee then filed a complaint with the Federal Labor Relations Authority ("FLRA") alleging that NASA and its OIG had committed an unfair labor practice under 5 USC §7114(a)(1)(8). An administrative law judge ("ALJ") ruled that the OIG was a representative of NASA and that certain aspects of the OIG's conduct violated the employee's right to union representation. On appeal, the Supreme Court affirmed the ruling of the ALJ, finding that the "investigators employed in NASA's OIG are unquestionably 'representatives' of NASA when acting within the scope of their employment." *NASA*, 527 U.S. at 240. The Court finds this conclusion persuasive. Deputy Inspector Montgomery was acting

as a representative of the BWC throughout the investigation of Plaintiff and therefore Plaintiff's letter to Montgomery seeking a name-clearing hearing constituted the requisite letter to her employer[2].

Nonetheless, the court finds that allowing the Plaintiff's Second Amended Complaint would be futile because Plaintiff did, in fact, have a name clearing hearing.  Specifically, the Court finds that the Plaintiff's criminal trial served as Plaintiff's required opportunity to clear her name.  The purpose of a name-clearing hearing "is to afford the aggrieved employee an opportunity to be heard to refute the charges disseminated against him." *Welling v. Owens State Cmty. College,* 535 F. Supp. 2d 886, 890 (N.D. Ohio 2008) (quoting *Gunasekera v. Irwin*, 517 F.Supp.2d 999, 1013 (S.D. Ohio 2007)(overruled on other grounds)(internal citations omitted)).  Plaintiff was afforded the opportunity to be heard and refute the charges made against her during the criminal trial.

In *Welling v. Owens State Cmty. College*, 535 F. Supp. 2d 886 (N.D. Ohio, 2008), the plaintiff-employee was accused of embezzling from his employer. Local television and newspaper reports publicized this accusation and criminal charges were brought, though ultimately dropped. His employer also filed a report with the Ohio Department of Jobs and Family Services' Office of Unemployment alleging that the plaintiff was discharged for dishonesty, theft, possible embezzlement and as a result, the plaintiff was denied unemployment compensation.  A formal hearing on the denial of unemployment compensation was conducted at which the plaintiff was represented by counsel, cross-examined witnesses, and testified.

---

[2]The Court also notes that the letter attached to Plaintiff's Second Amended Complaint indicates that it was "cc'd" to "Marsha Ryan, Administrator, BWC." (Doc. 21-4).  This is further evidence that Plaintiff asked her employer for a name-clearing hearing.

Approximately half of the hearing centered on the embezzlement accusations against him. The denial of benefits was affirmed and Plaintiff filed suit against his employer alleging a §1983 deprivation of liberty interest for failure to hold a name-clearing hearing. The district court concluded that the hearing before the unemployment commission served as a name-clearing hearing and therefore no other name clearing hearing was required. *Id* at 891. In so holding, the court refused to allow the plaintiff a second "bite at the apple that the Plaintiff has already had." *Id*.

Likewise, in *Graham v. City of Philadelphia*, 402 F.3d 139 (3d Cir. 2005), the plaintiff police officer was terminated from his employment following his arrest for sex with a minor. Following a criminal trial at which he was acquitted, the officer filed suit against his employer alleging deprivation of a liberty interest due to the employer's failure to hold a name-clearing hearing. The Third Circuit determined that the employee's "criminal trial negate[d] his entitlement to a name-clearing hearing because that trial satisfied the requirements of the Due Process Clause." *Id* at 144. In so concluding, the Court found that the employee's "criminal trial provided him with more than adequate opportunity to refute the allegations asserted against him." *Id.* Other courts have also concluded that various types of post-deprivation hearings were sufficient to meet the name-clearing hearing requirement. *See e.g., Seeley v. Board of Comm'rs*, 654 F. Supp. 1309, 1312 (D. Colo. Mar. 9, 1987) (criminal jury trial gave plaintiff the required opportunity to clear his name); *Hoffman v. Kelz,* No. 06-C-153-C, 2007 U.S. Dist. LEXIS 12146 (W.D. Wis. Feb. 20, 2007) (fact-finding hearing before Village Board provided "ample opportunity" to address charges against the plaintiff and therefore employer was entitled to summary judgment on plaintiff's claim for failure to provide name-clearing hearing).

Here, the Plaintiff was accused by her employer of "Misuse of State Equipment" and "Making False Statements." (Doc. 21-4); *see also* Office of the Investigator General, Report of Investigation, No. 2009174 (June 26, 2009).[3] She was then criminally charged with Unauthorized Use of Property, Theft in Office, Perjury, and Falsification. *See Ohio v. Claborn*, No. 10CR-02-1047 (Franklin County Court of Common Pleas, Criminal Division, Filed February 17, 2010). These charges stemmed directly from the allegations made by her employer and which were publicized by the OIG. A criminal trial was held on these charges at which Plaintiff was represented by council and presumably free to present evidence in her defense. Plaintiff was therefore given ample opportunity by the State to clear her name and restore her reputation. While arguably a substantial period of time passed between the deprivation and the hearing, this was due to Plaintiff's own repeated willingness to delay her criminal trial. *See Ohio v. Claborn*, No. 10CR-02-1047 (Franklin County Court of Common Pleas, Criminal Division, Filed February 17, 2010) (docket shows at least twelve continuances and waivers of speedy trial in Plaintiff's case). That Plaintiff was ultimately found guilty does not negate the fact that she was in fact given the opportunity to clear her name as required by due process.

The Court finds that allowing Plaintiff leave to file a Second Amended Complaint would be futile. Accordingly, the Court **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint and orders that Doc. 21 be removed from the Court's docket. Defendants' Motion to Strike the Plaintiff's Second Amended Complaint (Doc. 22) is therefore **DENIED** as

---

[3]This is a public record available on the Ohio Office of the Inspector General website, www.watchdog.ohio.gov. The Court takes judicial notice of the existence of the Inspector's Report and the allegations brought thereunder, but does recognize the document as evidence of the truth of the matters asserted therein.

moot. Defendants' Motion to Strike Exhibits and Allegations from the Memorandum in Opposition (Doc. 22) is also **DENIED** as moot.

      **B.**      **Motion to Dismiss**

Based on the foregoing analysis, the Court concludes that the Plaintiff has failed to state a claim for deprivation of a liberty interest under 42 U.S.C. §1983 because she was provided a name-clearing hearing by the State. Accordingly, Defendants' Motion to Dismiss Amended Complaint on Plaintiff's 42 U.S.C §1983 claim for failure to grant a name clearing hearing[4] is **GRANTED.**

Plaintiff's Amended Complaint also contains allegations that the Defendants violated her constitutional rights when she was interviewed by Defendant Montgomery without being afforded representation. In the instant case, Plaintiff alleges that Montgomery subjected her to a criminal interrogation and unlawfully barred her from exercising both her constitutional right not to incriminate her self and her constitutional right to representation. The Sixth Circuit has recognized a 42 U.S.C. §1983 cause of action based on violations of the plaintiff's Fifth Amendment rights. *See McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005). To the extent Plaintiff is attempting to state such a claim, Defendants move the court for dismissal of such claim. Defendants assert that Plaintiff is collaterally estopped from raising this issue because Plaintiff could have raised the issue during her criminal trial. Plaintiff makes two arguments against the application of collateral estoppel. First, that her motion to suppress was

---

[4]Defendant also move to dismiss any claim the Plaintiff may be trying to make for violations of her rights under her Ohio Civil Services Employees ("OCSEA") Contract. The Plaintiff has not attempted to bring a claim for violation of her union rights, and asserts that she made those allegations solely as additional evidence of the Defendants' violation of her due process rights. *See* Plaintiff's Response to Motion to Dismiss (Doc. 20, p. 6).

based on her Fourth Amendment rights and not, as here, her Fifth Amendment rights.  Second, Plaintiff asserts that the trial court never made a ruling that her rights were not violated or that "Plaintiff did not have the constitutional right to be informed that she was the subject of a criminal investigation."  (Doc. 29).

Although Defendants initially argued that the claim was barred by *res judicata*, pursuant to the Court's order for supplementation, Defendants now urge dismissal on the grounds of collateral estoppel. Collateral estoppel "bars any relitigation of an issue which has previously been litigated and determined in a prior action by the same parties, or their privies." *Contreras v. Simone*, 112 Ohio App. 3d 246 (Ohio Ct. App. 1996).  Thus, a plaintiff cannot relitigate issues in a subsequent 42 U.S.C. § 1983  action that were litigated in a state court criminal proceeding. *See Mink v. Weglage*, 614 F. Supp. 93 (S.D. Ohio 1985).  The Defendants in this case may be considered privies of the State of Ohio, which was involved in Plaintiff's criminal proceeding. *Id* at 94-95 (citing *Trautwein v. Sorgenfrei*, 391 N.E.2d 326 (Ohio,1979)).

The Court finds that Plaintiff's claims that her constitutional rights were violated during the OIG investigation are barred by collateral estoppel. The motion to suppress was decided by a court of competent jurisdiction and the parties were both involved in the earlier action.  A review of the record below also shows that the issues raised by Plaintiff in this case were actually and directly litigated in the prior action.

In her criminal case, Plaintiff filed a motion to suppress Plaintiff's statements to Defendant OIG Joseph Montgomery's during the investigatory interview.  (Doc. 19, Ex. B). In moving to suppress her statements, Plaintiff argued that the government failed to provide her an attorney during Montgomery's "interrogation," failed to give her Miranda warnings, and then

improperly used her statements to charge her with criminal offenses. (*Id*). Plaintiff also argued that the OIG investigation and subsequent attempt by the government to use those statements in a criminal action was barred by *Garrity v. New Jersey*, 385 U.S. 493 (1967). In *Garrity*, the Supreme Court held that "when a public employer conducts an internal investigation it may dismiss an employee who refuses to answer investigative questions, but it may not use any incriminating statements against the employee in a criminal prosecution regarding the matter under investigation." *Id*.

The state court held a hearing on Plaintiff's motion to suppress. The State called as witnesses OIG employees Joe Montgomery and Ron Nichols. Both individuals testified that they had no authority to compel Plaintiff's attendance or testimony and that they did not threaten her in anyway. Although Montgomery recognized there could be criminal charges brought from his investigation and failed to inform Plaintiff of this fact, he testified that he has no authority to compel the state to file criminal charges. In response, Plaintiff testified that she was extremely intimidated in the interview, was unaware that it could lead to criminal charges, and felt that she had no choice but to participate in the interview. After hearing all the proferred testimony, the trial court denied the motion finding that there "wasn't any evidence of any threats or coercion." (Transcript at p.93). The court further found that even if the OIG could have influenced the BWC to discipline Plaintiff for failing to cooperate in the investigation, it was irrelevant because there were no threats. (*Id*). The court also concluded that the *Garrity* case was inapplicable because *Garrity* applies where an employer actually threatens an employee who fails to answer investigative questions. Because there were no threats (and because OIG was not Plaintiff's

-13-

employer) *Garrity* did not apply. (*Id*). Finally, the court concluded that the failure to give Miranda warnings was not problematic because Plaintiff was never in a custody. (*Id* at 94).

Plaintiff's section 1983 claim that her constitutional rights were violated when she was subjected to an interrogation without an attorney and was not informed that her statements could form the basis of criminal charges against her has already been fully and fairly litigated. This Court cannot consider Plaintiff's claim without necessarily revisiting the decision of the state court. In order for Plaintiff to prevail on her section 1983 claim, she would have to allege and establish that her constitutional right not to incriminate herself was violated by Defendant Montgomery, acting under color of state law, when he refused to allow her to have an attorney during a custodial interrogation. After a lengthy hearing on her motion to suppress, the state court determined that Plaintiff: 1) had no constitutional right to an attorney at an investigatory interview with the OIG, and 2) that she was never in any sort of custodial interrogation. Thus, in order to consider Plaintiff's claim, this Court necessarily has to allow the relitigation of issues already determined by the State court. This is exactly the type of situation that collateral estoppel is designed to avert.[5] *Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007) (quoting *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005) (plaintiffs "may not use federal court as a 'venue for re-litigating issues that were decided in a prior state criminal case.'").

Finally, the Court concludes that Plaintiff's section 1983 claims are barred by the holding in *Heck v. Humphrey*. In *Heck*, the Supreme Court held that in order to recover for an

---

[5] The Court also notes that Plaintiff failed to appeal the state court's ruling on her motion to suppress.

unconstitutional conviction or imprisonment, or other harm "caused by actions whose unlawfulness would render a conviction or sentence invalid," a section 1983 plaintiff must prove that the conviction has been reversed on appeal, expunged, declared invalid, or called into question by issuance of a writ of habeas corpus. Thus, a claim for damages under 1983 that bears a relationship to a conviction or sentence that has not been invalidated, can not be maintained.

Plaintiff alleges that she was denied the right to counsel and denied her right to receive Miranda warnings during the OIG investigatory interview. If Plaintiff could prove that Montgomery was a law enforcement officer, that she was in custody, and was denied her right to counsel or denied her right to receive Miranda warnings, then such evidence would necessarily invalidate her conviction in state court. Because the Plaintiff has failed to show that her convictions have been reversed on appeal or otherwise invalidated, she may not maintain a 1983 claim. *See e.g.*, *Cumpian v. Nye*, No. 97-4144, 1998 U.S. App. LEXIS 28368 (6th Cir. 1998).

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 24) is **DENIED.** The Clerk shall remove the Second Amended Complaint (Doc. 21) from the Court's Docket. Defendants' Motion to Dismiss Amended Complaint (Doc. 19) is **GRANTED**. Defendants' Motion to Strike the Plaintiff's Second Amended Complaint and Exhibits and Allegations from the Memorandum in Opposition (Doc. 22) is therefore **DENIED** as moot.

The Clerk shall remove Documents 19, 22, and 24 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**